# United States District Court

**NORTHERN** DISTRICT OF **CALIFORNIA**

ORIGINAL

FILED
DEC 11 2006
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
V.
SHON MATTHEW SQUIER
2812/2814 Chronicle Ave., Hayward. CA, and VALERIE LYNN HERSCHEL
26959 Parkside Dr., Hayward, CA

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 4 06 70799 WDB

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **9/11/06 through 11/06** in **Alameda** county, in the **Northern** District of **California** defendant(s) did, (Track Statutory Language of Offense)

Did manufacture, distribute or possess with intent to manufacture, distribute a controlled substance (marijuana); Did conspire to manufacture, distribute or possess with intent to manufacture, distribute a controlled substance (marijuana); Did knowingly, open, lease, rent, use or maintain any place, whether permanently or temporaril, for the purpose of manufacturing, distributing, or using any controlled substance, or managed or controlled any place, whether permanently or temporarily, either as an owner, lessee, agent, or occupant for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

in violation of Title **21** United States Code, Section(s) **841, 846 and 856**

I further state that I am a(n) **Special Agent of the DEA** and that this complaint is based on the following
Official Title
facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Approved
As To
Form: _____
AUSA: H. H. (SHASHI) KEWALRAMANI

_____
Name/Signature of Complainant:   DEA SA KENNY LEE

Sworn to before me and subscribed in my presence,

11 Dec 06                                      at   San Francisco, California
Date                                                City and State

The Honorable Bernard Zimmerman
United States Magistrate Judge                      _____
Name & Title of Judicial Officer                    Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

Document No.
District Court
Criminal Case Processing

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Kenny Lee, being duly sworn, hereby state and declare as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of a criminal complaint and a warrant to arrest to SHON MATTHEW SQUIER ("SQUIER"), date of birth August 28, 1972 and VALERIE LYNN HERSCHEL ("HERSCHEL"), date of birth September 27, 1983, the owner and manager, respectively, of the Local Patients Cooperative ("LPC" or "LPCC") in Hayward, California, which is being operated to grow and sell marijuana in violation of Title 21, United States Code, Section 841 (Manufacture, Possession, and Distribution of Controlled Substances); Title 21, United States Code, Section 846 (Conspiracy to Manufacture, Possession, and Distribution of Controlled Substances); and, Title 21, United States Code, Section 856 (Maintaining a Facility to Manufacture a Controlled Substance). Because this affidavit is being submitted for the limited purpose of supporting a criminal complaint and obtaining authorization to arrest SQUIER and HERSCHEL, I have not included each and every fact known to me concerning this investigation.

2. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

### A. Training and Experience

3. I am a Special Agent ("SA") of the Drug Enforcement Administration ("DEA") assigned to the San Francisco Field Division, Oakland Resident Office. I have been a DEA agent for approximately five years. As part of my training, I received formal training at the DEA's Training Academy in Quantico, Virginia. This training included four months of

1

comprehensive instruction in, among other subjects, narcotics trafficking investigations, financial investigations, drug identification, interdiction, and undercover operations. I have since received additional training in drug trafficking methods, money laundering investigations, and wire intercepts. Prior to my employment with DEA, I worked for the United States Customs Service for five years as a Senior Customs Inspector for the Port of Newark, Newark, New Jersey. I am fluent in the Cantonese dialect of the Chinese language and have used this skill throughout my law enforcement career.

  4. While at the DEA, I conducted and/or participated in over 100 investigations involving the unlawful possession with intent to distribute controlled substances, distribution of controlled substances, the laundering of monetary instruments, and associated conspiracies, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 856 and 18 U.S.C. §1956. These investigations have resulted in several state and federal prosecutions of individuals who have smuggled, received, and distributed controlled substances including marijuana, cocaine, heroin, methamphetamine, and MDMA (ecstasy), as well as the seizure of those illegal drugs and the proceeds from the sale of those illegal drugs. In conducting these investigations, I have employed a variety of investigative techniques, including physical and electronic surveillance, analysis of telephone records and pen register data, witness interviews, the execution of state and federal search warrants, and working with informants and cooperating sources.

  5. Of the cases in which I have participated, some were Title III narcotics and money laundering investigations in which court authorized wire interceptions were used. During these investigations, I participated in the monitoring, review, and deciphering of intercepted coded conversations between narcotics traffickers. I have also participated in the seizure of narcotics and narcotics proceeds that resulted from the monitoring of such conversations. I have

interviewed drug traffickers and money launderers after their arrests, as well as confidential sources, and discussed with them the meaning of the codes that they used to facilitate the commission of drug and money laundering offenses. In addition, I have conducted investigations concerning the concealment of assets and am familiar with the investigative use of bank records, drug ledgers, telephone records and bills, photographs, and financial records. I have participated in investigations involving the interception of electronic communications of digital display paging devices. I have also acted in an undercover capacity in narcotics investigations

6. Further, I received specialized training relating to the indoor and outdoor cultivation of marijuana and the distribution of marijuana. I am also familiar with California "medical marijuana" laws and attempts to distribute marijuana through dispensaries. In my current assignment with DEA, I have conducted and participated in numerous investigations of indoor/outdoor marijuana cultivation and distribution.

**B.     Role in Current Investigation and Basis of Information**

7. Since January 2006, I have been the case agent for the investigation described in this affidavit. The facts set forth in this affidavit are known to me from my own investigation, from my review of reports of related investigations, from my training and experience, and from my conversations with other agents of DEA, IRS, Police Officers from the Hayward, California Police Department and the Southern Alameda County Narcotics Enforcement Team.

**C.     Training And Experience Regarding Marijuana Dispensaries**

8. Based on my training and experience, I know the following regarding the operation of marijuana dispensaries:

    a)     Proprietors of marijuana dispensaries often invest in several different

dispensaries at once to maximize profits;

   b) Proprietors of marijuana dispensaries often buy their marijuana from several different vendors to obtain different varieties of marijuana and marijuana edibles;

   c) Proprietors of marijuana dispensaries will often limit the allowable purchases for customers on each visit. This allows the dispensaries to make more transactions at increased prices to maximize profits.

   d) Marijuana dispensaries often sell several different varieties of marijuana products including marijuana plants, both mature and immature (clones); hash; hash oil; kief (concentrated cannabis); topical lotions and ointments; marijuana edibles, including baked goods, candies, drinks, ice cream, soups, and the like.

   e) Marijuana dispensaries often use armed security guards to protect their marijuana and marijuana proceeds from robbery and theft. They will also keep all doors locked to restrict free access to the dispensary, and often have video surveillance cameras installed inside and outside of the premises.

   f) Marijuana dispensaries will purposely not display the name of their dispensary, so as to not draw attention by law enforcement officials and the general public.

   g) Marijuana dispensaries conduct most of the marijuana transactions with cash and large amounts of cash are maintained at the dispensaries and at the place(s) of residence of the owner(s).

   h) Proprietors of marijuana dispensaries often make purchases of high-value items with cash, in order to conceal their amassed wealth.

   i) Customers of marijuana dispensaries often park away from the facility and look in all directions while departing the dispensary because they are nervous about being

observed by law enforcement and/or arrested for marijuana possession.

D.  **Background of Assisting Federal Agent**

9.  I am working on this investigation jointly with Michael Woo, Special Agent with the Internal Revenue Service (IRS). Special Agent Michael Woo is employed with the IRS, Criminal Investigation (CI) in Oakland, California. He has been so employed since June 1991. Prior to being a Special Agent with the IRS CI, SA Woo was an IRS Revenue Agent from 1987 to 1991 and holds a Bachelors Degree in Accounting. He has received training in accounting and financial investigative techniques at the Federal Law Enforcement Training Center, Glynco, Georgia. As a Special Agent for IRS, he has participated in numerous criminal investigations and search warrants involving Income Tax Evasion (26 U.S.C. § 7201), Willfully Making and Subscribing to Income Tax Returns which are False as to a Material Matter (26 U.S.C. § 7206(1)), Conspiracy to Commit Offenses or to Defraud the United States (18 U.S.C. § 371), Money Laundering Violations (18 U.S.C. §§1956 and 1957), and Currency Structuring (31 U.S.C. § 5324).

## II.   APPLICABLE STATUTES

*21 U.S.C. § 841 – Prohibited Acts*

> (a) Unlawful acts
> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally–
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, dispense, a controlled substance.

*21 U.S.C. § 846 – Attempt and conspiracy*

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

/ / /

*21 U.S.C. § 856 – Maintaining drug-involved premises*

> (a) Unlawful acts
> Except as authorized by this subchapter, it shall be unlawful to—
> (1) knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance;
> (2) manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

### III.   SUMMARY OF INVESTIGATION AND PROBABLE CAUSE

#### A.   Subjects of Investigation

10.   This investigation has revealed that between a date unknown, but no later than, September 11, 2006 and November 2006, SQUIER and HERSCHEL manufactured, distributed, and conspired to manufacture and distribute a controlled substance, namely, marijuana, a Schedule I controlled substance and maintained a drug-involved premises at Local Patients Cooperative, also known as "LPCC", located at 22612 through 22630 Foothill Blvd., Hayward, California. Based on my investigation, I believe "LPCC" is an acronym for Local Patients Cannabis Cooperative. These acts were done in violation of 21 U.S.C. §§ 841, 846, and 856.

#### B.   Initiation of the Investigation

11.   In or around October 2005, I was notified of a "medical marijuana" dispensary operating at 22630 Foothill Blvd., Hayward, California. I queried several online, public websites (one of which was www.ca420info.com) indicating that the name of the dispensary at 22630 Foothill Blvd. is "Hayward Local Patients Co-op," which has been operating since April of 2003. The telephone number listed for Hayward Local Patients Co-op of Hayward California was (510) 537-2405.

12.   Based on my training and experience, I am aware that "medical marijuana"

6

dispensaries are retail establishments selling marijuana to customers, purportedly for medical reasons. These California dispensaries are seeking protection under California's medical marijuana laws -- Proposition 215 and Senate Bill 420 -- in order to sell marijuana for profit. I believe that Hayward Local Patients Co-op attempts to disguise the breadth of its criminal activity by claiming that it caters exclusively to persons suffering from medical illnesses, when in fact persons without any medical condition can purchase marijuana (a Schedule I controlled substance) at the retail establishment.

C.  **Inspection of LPCC's Facility by Hayward Police Department and Confirmation of SQUIER and HERSCHEL's Involvement in LPCC**

   *1.  Inspection By Hayward Police Department*

   13.  On September 11, 12, and October 24, 2006, Officers from the Hayward Police Department ("HPD") conducted inspections on the premises of LPCC, located at 22612 through 22630 Foothill Blvd., Hayward, California. Under the LPCC's agreement with the City of Hayward, HPD may periodically make unannounced visits to confirm that the LPCC is safe, sanitary and in compliance with all of the provisions of the documented conditions. The results of their observation, which they in turn told to me, are as follows:

   a)  HPD officers interviewed SQUIER and HERSCHEL and confirmed that SQUIER was the owner of the business and HERSCHEL was a manager.

   b)  SQUIER informed HPD Officers that LPCC currently occupies the entire building at 22612 through 22630 Foothill Blvd., with the exception of the two businesses downstairs.

   c)  HPD officers observed over approximately 200 plus pounds of dried marijuana stored in multiple vaults and freezers, approximately 100 plus baby marijuana plants, also known as "clones" about 3" to 6" inches tall in height, and multiple grow rooms actively

cultivating marijuana plants ranging from two feet in height to four feet in height.

        d)      HPD officers observed approximately 3 to 4 uniformed security guards at the perimeter of the building and another uniformed security personnel at the entrance of 22630 Foothill Blvd. to control access.

    2.    *Filings With The State of California*

    14.    In November 2006, a search of the State of California Corporate Records revealed that on or about April 6, 2004, SQUIER filed an Article of Incorporation with the State of California for LPCC, INC. The Article stated that the purpose of the corporation was to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California.

    15.    On or about May 28, 2004, SQUIER filed a Statement of Information with the State of California, Secretary of State's Office for LPCC, INC. The Statement named SQUIER as the Chief Executive Officer, Secretary, and Chief Financial Officer of the company. SQUIER stated LPCC, INC. was a "pain management" business.

    16.    On or about February 18, 2005, HERSCHEL signed a Statement of Information with the State of California, Secretary of State's Office, naming HERSCHEL as the "Executive Secretary" of LPCC, INC.

    3.    *Documents From Banks*

    17.    According to documents received from various banks where LPCC maintained bank accounts, I was informed that on or about January 31, 2003, LPCC opened account number 035-002840 at the Bank of the West ("BOTW Account No. 1"). The name on BOTW Account No. 1 is SQUIER d/b/a Local Patients Cooperative. Similarly, on or about November 15, 2005, LPCC, INC. opened another bank account at Bank of the West with account number 035-006577

("BOTW Account No. 2"). The signature card for BOTW Account No. 2 was signed by SQUIER and HERSCHEL, listed the business as "Pain Mgmnt", and identified HERSCHEL as the Secretary for LPCC, Inc. Bank of the West closed these accounts in 2005.

18. According to documents received from Washington Mutual Bank, SQUIER and HERSCHEL opened a bank account at Washington Mutual Bank on or about September 20, 2005. Both HERSCHEL and SQUIER signed the Master Account Agreement and it identified LPCC, Inc. as the business name on the account.

    4.    *Documents From Utility Companies*

19. Documents from PG&E revealed electric service was established at 22630 Foothill Blvd. on December 3, 2003 by Local Patients Cooperative with a business telephone number of (510) 537-2405. The PG&E records also list the last four digits of a "Tax Identification Number" associated with the account that matches the last four digits of SQUIER's social security number.

20. Documents from the Hayward Water Company – City of Hayward revealed that the Local Patients Cooperative is the subscriber for utilities at 22630 Foothill Blvd. and listed SQUIER as the owner of Local Patients Cooperative. The records also revealed that the Local Patients Cooperative established water service on December 20, 2002.

21. A November 2006 query of LexisNexis Law Enforcement Solutions database listed SQUIER as the business contact for Local Patients Cooperative located at 22630 Foothill Blvd., Hayward, California.

**D.**    **Confirmation of the Sale and Distribution of Marijuana at LPCC's Facility Through On-Line Research**

22. In addition to the confirmation by HPD officers that they saw a significant amount of marijuana at LPCC's facility in Hayward, in November 2006, I conducted an online

query of Local Patients Cooperative of Hayward and found that The Oakland Tribune, a San Francisco Bay area newspaper, published an article regarding the business. The article indicated that Local Patients Cooperative broke its three-year operating memorandum with the City of Hayward by having more than 3 pounds of marijuana on the premises at one time. The article further stated that police officers inspected the club in September of 2006 and said the officers observed 30 pounds of marijuana, 10 times Hayward's limit. The article also stated that police officers again returned to LPCC's facility in October of 2006 and said the police officers observed 200 pounds of marijuana at the facility.

23.     In an additional online search, I viewed a menu posted by www.ca420info.com as recent as November 16, 2006, that had a category listing Cannabis Varieties presumably available for sale by LPCC. The site also included miscellaneous items for sale, listing edibles, hash, keef, cookies, brownies, and oils. As of December 6, 2006, this information is listed on the www.ca420info.com website, indicating that LPCC is still operating as a marijuana dispensary.

E.      **Surveillance of LPCC's Facility, and SQUIER and HERSCHEL's Residences**

*1.      October 12, 2006*

24.     On October 12, 2006, multiple law enforcement agents participated in the surveillance of SQUIER and several of his known associates. As part of that surveillance, at approximately 8:00 a.m., I and IRS-CI SAs Michael Woo and Patrick Ernst established surveillance in the vicinity of SQUIER's residence located at 2812/2814 Chronicle Avenue, Hayward, California.

25.     At approximately 8:30 a.m., I saw SQUIER leave the 2812/2814 Chronicle Avenue, Hayward, California address through the driveway common to both addresses and drive

to LPCC's facility at 22630 Foothill Blvd, Hayward. SQUIER parked his car in the back parking lot of LPCC's facility, and proceeded to walk through the front door of 22630 Foothill Blvd.

26. Agents noted people that appeared to be security guards in the back lot area of the LPCC, one at an adjacent gas station where customers appeared to park and another at the front of the building in a medical supplies store parking lot. HPD officer Snell told DEA SA Jeff Cundith that he has also seen the security guards at this location and found it highly unusual to have so many security personnel around a building. Based on HPD officer Snell's experience in Hayward, only banks or businesses with large amounts of cash on hand have multiple security guards.

27. Between 10:00 a.m. and 11:00 a.m., DEA SA Todd Armstrong stated that he observed what appeared to be between approximately 20 to 30 white and/or Hispanic males, appearing to range in age from approximately 20 to 40 years, entering the front entrance of LPCC's facility at 22630 Foothill Blvd, Hayward, CA. According to SA Armstrong, when the men entered LPCC's facility, they did not appear to be carrying anything in their hands. SA Armstrong stated he observed several men leaving the LPCC facility in separate directions and each carrying small white bag with a blue strip containing some form of a word printed on it. SA Armstrong learned that the printing on the blue strip read "Prescription" because several men walked close enough to SA Armstrong allowing him to read the lettering. SA Armstrong told me that most of the men remained at the address for approximately 5 to 10 minutes. The men entering the establishment entered unassisted and appeared to be healthy. Based upon the knowledge that the above address is a publicly-known marijuana dispensary, SA Armstrong believes the white bags contained various amounts and strains of marijuana.

28. At approximately 11:05 a.m., I observed SQUIER walking from the vicinity of LPCC's facility and into his car, which was in the back parking lot.

   2. *October 20, 2006*

29. On October 20, 2006, at approximately 9:30 a.m., I observed SQUIER's car parked in the back parking lot of LPCC's facility.

30. On that same day, between 10:00 a.m. and 12:30 p.m., I observed what appeared to be between approximately 20 to 30 white and/or Hispanic males, appearing to range in age from approximately 20 to 40 years, entering the front entrance of LPCC's facility at 22630 Foothill Blvd, Hayward, CA. When the men entered the establishment, it did not appear to me that they were carrying anything in their hands. When the men I observed entering LPCC's facility left the LPCC facility, many of them appeared to be leaving in separate directions with each carrying a small white bag with a blue strip containing lettering, which I believe to be "Prescription" based on SA Armstrong's earlier observations of similar packaging. I observed that most of the men appeared to remain at LPCC's facility for approximately 5 to 10 minutes. The men entering the establishment entered unassisted and appeared to be healthy. Based upon the knowledge that the above address is a publicly-known marijuana dispensary, I believe the white bags contained various amounts and strains of marijuana.

   3. *October 24, 2006*

31. At approximately 9:00 a.m., I again observed SQUIER's car parked in the back parking lot of LPCC's facility at 22630 Foothill Blvd., Hayward, California.

32. At approximately 9:50 a.m., I observed SQUIER walking from the vicinity of 22630 Foothill Blvd. and into his car parked in the back parking lot.

33. Later that day, from approximately between 3:00 p.m. to 5:00 p.m., I observed

what appeared to be between approximately 20 to 30 white and/or Hispanic males, appearing to range from approximately 20 to 40 years of age, entering the front entrance of LPCC's facility. When the men entered the establishment, they did not appear to be carrying anything in their hands. When several of the men left LPCC's facility the address they were observed leaving in separate directions and each carrying a small white bag with a blue strip containing lettering, and believed to be the word "Prescription" based on SA Armstrong's earlier observations. Most of the men appeared to remain at the address for approximately 5 to 10 minutes. The men entering the establishment entered unassisted and appeared to be healthy. Based upon the knowledge that the above address is a publicly-known marijuana dispensary, I believe the white bags contained various amounts and strains of marijuana.

    4.    *November 6, 2006*

    34.    On November 6, 2006, at approximately 8:31 a.m., I followed HERSCHEL from her residence at 26959 Parkside Drive, Hayward, California to LPCC's facility at 22630 Foothill Blvd, Hayward. HERSCHEL parked her car in the back parking lot of LPCC's facility and proceeded to walk through the front door of the facility. HERSCHEL arrived at LPCC's facility at approximately 8:40 a.m.

    35.    At approximately 9:00 a.m., I observed SQUIER's car also parked in the back parking lot of 22630 Foothill Blvd., Hayward, California.

    36.    On the same date, at approximately 8:00 p.m., I again established surveillance in the vicinity of LPCC's facility.

    37.    I observed several vehicles including the following vehicles parked in the parking lot associated with Local Patients Cooperative:

    a) HERSCHEL's car, and

b) 2001 reddish maroon Volvo with California license plate 5KSJ724, which according to records from the California DMV is registered to SQUIER.

38. At approximately 10:15 p.m., I observed approximately 10-15 individuals exit 22630 Foothill Blvd, Hayward and walked toward the back parking lot to their prospective vehicles. At this time, I observed HERSCHEL enter her car and exit the parking lot.

39. On November 6, 2006 from approximately between 8:00 p.m. to 10:00 p.m. I observed what appeared to be between approximately 20 to 30 white and/or Hispanic males, appearing to range from approximately 20 to 40 years of age, entering the front entrance of 22630 Foothill Blvd, Hayward, CA. When the men entered the establishment, they did not appear to be carrying anything in their hands. When I observed several of them leaving the address they were observed leaving in separate directions and each carrying a small white bag with a blue strip, containing what I believe to be the word "Prescription" written on the blue strip based on SA Armstrong's earlier observations. Most of the men remained at the address for approximately 5 to 10 minutes. The men entering the establishment entered unassisted and appeared to be healthy. Based upon the knowledge that the above address is a publicly-known marijuana dispensary, I believe the white bags contained various amounts and strains of marijuana.

5. *November 7, 2006*

40. On November 7, 2006, at approximately 8:00 p.m., I and other agents established surveillance in the vicinity of LPCC's facility located at 22630 Foothill Blvd., Hayward, California.

41. At approximately 8:05 p.m., I observed various cars parked in the parking lot associated with Local Patients Cooperative, including HERSCHEL's car.

14

42. At approximately 10:10 p.m., I observed approximately 10-15 individuals exit 22630 Foothill Blvd, Hayward and walked toward the back parking lot to their prospective vehicles. At the same time, I also observed HERSCHEL enter her car exit the parking lot.

43. On November 7, 2006 from approximately between 8:00 p.m. to 10:00 p.m., I observed what appeared to be between approximately 20 to 30 white and/or Hispanic males, appearing to range from approximately 20 to 40 years of age, entering the front entrance of 22630 Foothill Blvd, Hayward, CA. When the men entered the establishment, they did not appear to be carrying anything in their hands. When I observed several of them leaving the address they were observed leaving in separate directions and each carrying a small white bag with a blue strip containing what I believe to be the word "Prescription" written on the blue strip, based on SA Armstrong's earlier observations. Most of the men appeared to remain at the address for approximately 5 to 10 minutes. The men entering the establishment entered unassisted and appeared to be healthy. Based upon the knowledge that the above address is a publicly-known marijuana dispensary, I believe the white bags contained various amounts and strains of marijuana.

   6. *December 5, 2006*

44. On December 5, 2006, I drove by the LPCC facility and saw persons appearing to be security guards near the front entrance of the LPCC facility as well as the corners of the building. Based on my experience and training and the information set forth above, I believe that the LPCC facility is still operating as a marijuana dispensary.

### IV. SUMMARY OF PROBABLE CAUSE

45. Based on the information contained in this affidavit, and my training and experience, there is probable cause to believe that SQUIER and HERSCHEL violated 21 U.S.C.

§§ 841, 846, and 856 by operating and maintaining LPCC. This probable cause is based on (1) observations by HPD Officers of LPCC's facility on September 11 and 12 and October 24, 2006 regarding LPCC's sale of marijuana and growing of marijuana at LPCC's facility; (2) statements from SQUIER and HERSCHEL indicating their roles in LPCC; (3) documents from banks confirming SQUIER and HERSCHEL's involvement in LPCC; and (4) surveillance by myself and other agents further confirming the ongoing sale of marijuana from LPCC's facility.

### V. REQUEST TO SEAL

46. I further request, in order to avoid compromising this on-going investigation, to prevent the subjects' flight, to prevent the destruction of evidence, and for the safety of the agents and officer, that this Affidavit and Criminal Complaint be filed under sealed until further order of the Court.

47. I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

_____
Special Agent Kenny Lee
United States Drug Enforcement Administration

Subscribed to and sworn before me this __11__ day of December 2006.

_____
THE HONORABLE BERNARD ZIMMERMAN
UNITED STATES MAGISTRATE JUDGE

16